FILED

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2008 JUN -9 PM 3:25

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

ROBERT RAITT and DIANE RAITT

Plaintiffs,

vs.

Case No.: 8:08-cv-01117-T-24EAJ

DAVOL INC., a Rhode Island corporation
and C. R. BARD INC., a New Jersey
corporation,

Defendants.

---

## COMPLAINT

Plaintiffs, ROBERT RAITT and DIANE RAITT, sue Defendants, DAVOL INC. and C. R. BARD INC., and allege:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1332, as complete diversity exists between Plaintiffs and Defendants. Plaintiffs are citizens of Florida. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

T446388
350.00

2. Venue is proper within this district pursuant to 28 U.S.C. § 1391, as a substantial number of the events, actions, or omissions giving rise to the Plaintiff's claims occurred in this district. At all times relevant to this matter, Defendants DAVOL and BARD conducted substantial business in this district.

## II. PARTIES

3. Robert Raitt is an adult resident of Riverview, Hillsborough County, Florida.

4. Diane Raitt is an adult resident of Riverview, Hillsborough County, Florida.

5. Defendant Davol is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island.

6. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/ stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Florida.

7. Defendant Bard has a registered agent at CT Corporation System, Tallahassee, Florida, and at all relevant times was authorized to conduct business in the State of Florida.

8. At all relevant times, Defendants themselves and/or through their agents, servants, employees and apparent agents, manufactured and sold the Kugel Patch, which caused injury to the Plaintiff in the state of Florida. The Kugel Patch was purchased and used in Florida in the ordinary course of commerce.

9. Defendants derive substantial revenue from medical devices used or consumed in the State of Florida.

10. Defendant expected, or should have expected, that their business activities could or would have consequences within the State of Florida.

## III. ALLEGATIONS COMMON TO ALL COUNTS

11. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Mr. Raitt's body.

12. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Mr. Raitt's body.

13. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

14. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mr. Raitt, Plaintiff's physicians, and the general public.

15. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Mr. Raitt, Plaintiff's surgeons, and the public at large.

16. On October 2, 2001 a Kugel Composix Mesh 11 x 14 cm, lot 41FLDP11, reference code 0010206, was used to repair Mr. Raitt's hernia defect. In early 2006, as a result of the patch's defective nature, an infection developed and the patch was removed March 9, 2006.

17. The Composix Kugel Patch hernia repair product implanted in Mr. Raitt was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for

hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

18. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Mr. Raitt, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

19. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform Mr. Raitt, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

20. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

21. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

22. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

23. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

ii. misidentified numerous Kugel Patch complication events;

iii. failed to apply the product quality hold and release procedure on a timely basis;

iv. failed to properly follow the procedures for conducting design validation review;

v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for

including only the Extra Large Kugel Patch sizes in the December 2005 recall;

vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;

vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

24. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

25. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

26. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

27. Neither Mr. Raitt nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mr. Raitt's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

28. In early 2006, Mr. Raitt developed an infection thought to be related to the Kugel Patch.

29. On March 9, 2006 Mr. Raitt was taken to the operating room to have the Kugel Patch removed. The first layer of mesh was found to be densely adhered to the abdominal wall. The mesh was filled with a murky, infected fluid. The bottom layer of mesh was found to be adhered to the small bowel. The mesh was removed and the small bowel was resected..

30. As a result of the patch's defective nature, Mr. Raitt suffered injury, including infection problems for many months following the removal of the patch. Mr. Raitt also required multiple followup surgical procedures.

31. Mr. Raitt has suffered and will continue to suffer injury, physical pain and mental anguish.

32. Mrs. Raitt makes a claim for loss of consortium due to her husband's Kugel Patch injuries.

33. Mr. Raitt has incurred substantial medical bills and loss of other monies.

34. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

35. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

36. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

37. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

38. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

39. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

**COUNT I**
**Negligence**

40. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

41. Defendants DAVOL and BARD were negligent to Mr. Raitt in the following respects:

42. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

43. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

44. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

45. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. Raitt.

46. Defendants DAVOL and BARD owed a duty to Mr. Raitt to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and

splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

47. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

48. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Mr. Raitt's hernia repair surgery failed, resulting in Mr. Raitt suffering pain and harm.

49. As a direct and proximate result of DAVOL's and BARD's negligence, Mr. Raitt has suffered injuries and damages.

50. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

## COUNT II
**Strict Product Liability**

51. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

52. Defendants DAVOL and BARD are strictly liable to Mr. Raitt in the following respects:

53. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

54. The Composix Kugel Patches were defective because they failed to perform safely and effectively for the purpose they were originally designed. Mr. Raitt's Composix Kugel Patch failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Composix Kugel Patch.

55. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

56. The Composix Kugel Patch implanted into Mr. Raitt was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

57. The Composix Kugel Patches, like the one found in Mr. Raitt, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Raitt as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Mr. Raitt;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Raitt;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Raitt, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

58. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

**COUNT III**
**Negligent Infliction of Emotional Distress**

59. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

60. Defendants DAVOL and BARD are liable to Mr. Raitt for the negligent infliction of emotional distress in the following respect:

61. Mr. Raitt suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting,

manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

62. Mr. Raitt suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

63. Therefore, DAVOL and BARD are liable to Mr. Raitt.

64. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

**COUNT IV**
**Intentional Infliction of Emotional Distress**

65. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

66. Defendants DAVOL and BARD are liable to Mr. Raitt for the intentional infliction of emotional distress in the following respect:

67. Mr. Raitt suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in

studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

68. Mr. Raitt suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Raitt.

69. Therefore, DAVOL and BARD are liable to Mr. Raitt.

70. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

**<u>COUNT V</u>**
**Breach of Implied Warranty**

71. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

72. Defendants DAVOL and BARD are liable to Mr. Raitt for their breach of implied warranty in the following respect:

73. DAVOL and BARD sold the Kugel Patch which was implanted in Mr. Raitt. DAVOL and BARD impliedly warranted to Mr. Raitt, his physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

74. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

75. Mr. Raitt, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

76. When the Composix Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

77. Mr. Raitt suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

78. WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

**COUNT VI**
**Failure to Warn**

79. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

80. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch to the hospital for hernia repair surgeries.

81. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mr. Raitt received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

82. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

83. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time

Mr. Raitt had his hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

84. Mr. Raitt did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

85. Mr. Raitt suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

86. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

87. WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

**COUNT VII**
**Fraud**

88. Mr. Raitt re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

89. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

90. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mr. Raitt received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and

reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

91. BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from Mr. Raitt, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

92. BARD and DAVOL fraudulently presented to Mr. Raitt, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

93. Mr. Raitt and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

94. As a direct and proximate result of Mr. Raitt's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Mr. Raitt was seriously and permanently injured

95. As a direct and proximate result of the acts of the Defendants, Mrs. Raitt has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

96. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

97. WHEREFORE, Plaintiffs demand judgment against Defendants for damages, costs and a trial by jury.

## GLOBAL PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, as follows:

a. compensatory damages on each cause of action;

b. reasonable attorneys' fees where recoverable;

c. costs of this action; and

d. such other additional and further relief as the Court may deem necessary, appropriate, and just.

## GLOBAL DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

Dated this 6th day of June, 2008.

PETER L. KAUFMAN
Florida Bar No. 0548421
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, P.A.
316 South Baylen Street, Suite 400
P.O. Box 12308 (32592)
Pensacola, FL 32502
Phone: (850) 435-7107
Facsimile: (850) 436-6107

ATTORNEY FOR PLAINTIFFS